UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LABORERS PENSION TRUST FUND-DETROIT AND VICINITY, et al., <br><br> Plaintiffs/Counter-Defendants, <br><br> v. <br><br> GEMELLI CONCRETE LLC, et al., <br><br> Defendants/Counter-Plaintiffs. | Case No. 22-11437 <br> Honorable Shalina D. Kumar <br> Magistrate Judge Anthony P. Patti |

**OPINION AND ORDER GRANTING DEFENDANTS/COUNTER-PLAINTIFFS' MOTION TO ENFORCE ARBITRATION AWARD (ECF NO. 16) AND DENYING PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO VACATE ARBITRATION AWARD (ECF NO. 17)**

**I. Introduction**

Plaintiffs/Counter-Defendants, the Laborers' Pension Trust Fund-Detroit and Vicinity (the Laborers' Fund) and its trustees (collectively, plaintiffs) bring this action pursuant to 29 U.S.C. § 1401(b)(2) to vacate an arbitration award, as modified, which determined that Defendants/Counter-Plaintiffs Gemelli Concrete LLC and Pumpco, LLC (collectively, defendants) were not subject to withdrawal liability under the Multiemployer Pension Plan Amendment Act (MPPAA), 29 U.S.C. § 1001(a) *et seq.*, and

that plaintiffs must refund overpayments made by defendants before the arbitration award was issued. ECF No. 7. Conversely, defendants sue to enforce that modified arbitration award.[1] ECF No. 1, No. 4:22-cv-11500. Plaintiffs and defendants each move for judgment on their respective actions to vacate and enforce. ECF Nos. 16, 17. Those motions are fully briefed, and based on the briefs and the record, the Court finds that a hearing is unnecessary for its determination of the motions. E.D. Mich. L.R. § 7.1(f)(2). For the reasons below, the Court denies plaintiffs' motion to vacate the modified arbitration award and grants defendants' motion to enforce that award.

## II. Factual Background

From 1998 to 2019, Gemelli provided concrete flat work services[2] in Southeast Michigan. ECF No. 16-2, PageID.181-83.[3] Gemelli employed Laborers' Local 1076 member (Laborers) and, under a series of collective

---

[1] Defendants action, originally filed separately and docketed as Case No. 22-11500, was later consolidated with the above-captioned action brought by plaintiffs to vacate the arbitration award. *See* ECF No. 10.

[2] Flat work is defined by the Laborers' Local 1076 collective bargaining agreement as concrete removal or replacement within a certain height or thickness. ECF No. 16-4, PageID.415.

[3] The Court takes the facts from the arbitration award's findings of fact, which neither party contests. See ECF No. 16-2; ECF No. 17, PageID.654.

bargaining agreements (CBAs) between Gemelli and Laborers' Local 1076 (Laborers' CBA), made pension contributions to the Laborers' Fund on behalf of its member-employees. In 2016, Gemelli acquired a concrete pump truck which uses a boom system to place concrete in elevated and difficult-to-reach spaces. Gemelli had an experienced pump truck operator train its Laborers to operate the pump trucks because the operation of that equipment requires skilled operators who are trained and certified. Gemilli later purchased additional pump trucks to use on its own projects and to rent to other contractors. Between 2016 and 2019, pump truck operations accounted for approximately 5% of Gemelli's revenue.

For Gemelli's pump trucks, Laborers performed the pump truck operations at the "general laborer" rate, and Gemelli continued to make contributions to the Laborers' Fund for all hours worked by its member-employees, including the ones operating the pump trucks. However, in its efforts to rent pump trucks to other contractors, would-be customer-contractors informed Gemelli that the operation of pump trucks was within the exclusive jurisdiction of the Operating Engineers Local 324 (OE), not the Laborers' Local 1076.

Because Gemelli's owners intended to retire from concrete flat work, it spun its pump truck operations off to a new entity, Pumpco, in September

2019.[4] Pumpco hired 11 employees, six of whom were identified as pump truck operators. Three of the six operators formerly worked as Laborers for Gemelli. Pumpco signed a CBA with the OE (the OE CBA) and, under that CBA, made required contributions to the OE benefit funds. All of Pumpco's operators are OE members and are paid at a rate consistent with the OE CBA, a rate which is generally higher than the rates paid under the Laborers' CBA. Because none of Pumpco's employees are Laborers, Pumpco does not contribute to the Laborers' Fund.

In December 2019, Gemelli notified the Laborers' Fund that it was closing and totally withdrawing from the cement contracting and finishing industry. The Laborers' Fund thus sent Gemelli a withdrawal liability questionnaire in May 2020. Based on Gemelli's responses to that questionnaire, the Laborers' Fund determined that Gemelli, by way of the pump truck operations it spun off to Pumpco, performed work within the jurisdiction of the Laborers' CBA but did not contribute to the Fund and that as a result Gemelli had withdrawal liability for unfunded benefits in the

---

[4] Gemelli last performed pump truck operations on September 9, 2019. Some Gemelli employees performed concrete flat work until December 2019.

amount of $434,366. The Laborers' Fund issued a Notice of Assessment of Employer Withdrawal Liability to Gemelli.

Gemelli contested the assessed employer withdrawal liability and requested a review under the governing procedures, *see* 29 U.S.C. § 1399. Gemelli argued that it was exempt from withdrawal liability under the MPPAA's building and construction industry exception. It maintained that prior to ceasing operations in December 2019, substantially all covered wages earned by its Laborers were earned for on-site construction services and that, after it ceased operating, neither Gemelli nor Pumpco performed the type of work within the scope and jurisdiction of the Laborers' CBA. Gemelli urged that no withdrawal had occurred under the MPPAA because Pumpco, which Gemelli acknowledges is an entity sharing common ownership, only operated pump trucks, using operators under contract with the OE, the union with jurisdiction over such work.

The Laborers' Fund denied the request for review and refused to revise its Notice of Assessment. It countered Gemelli's arguments by contending that the assessment was consistent with 29 U.S.C. § 1383(b), which sets forth that a construction industry employer withdraws if it (or any entity under the same control) "ceases to have an obligation to contribute under the plan" but "continues to perform work in the jurisdiction of the

collective bargaining agreement of the type of work for which contributions were previously required."

Gemelli demanded arbitration, which was conducted pursuant to the American Arbitration Association's Multiemployer Pension Plan Arbitration Rules for Withdrawal Liability Disputes. As part of their arbitration briefing, the parties presented the arbitrator with deposition transcripts, affidavits, and other admissible documentary evidence. The arbitrator concluded that Pumpco did not continue to perform work in the jurisdiction of the Laborers' CBA and of the type for which contributions were previously required. ECF No. 16-2, PageID.188. The arbitrator's award found that Pumpco's continued pump truck operations did not trigger employer withdrawal liability. Accordingly, the arbitrator did not award the Laborers' Fund with the sum it assessed on defendants, and the arbitration award, as modified, required the Laborers' Fund to refund payments of $137,880 made by defendants before the award was issued, plus interest of $3,343.[5] ECF No. 16-3, PageID.192. The parties' reciprocal actions to vacate and enforce the arbitration award followed.

---

[5] Interest continues to accrue until refund and interest is paid in full. ECF No. 16-3, PageID.192.

### III. Analysis

#### A. Standard of Review

The MPPAA provides for arbitration as the means to resolve disputes over withdrawal liability and for limited judicial review of the arbitrator's decision resolving such a dispute. *Sherwin-Williams Co. v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 158 F.3d 387, 392 (6th Cir. 1998) (citing 29 U.S.C. §§ 1401(a)(1), (b)(2)). Judicial review of an arbitrator's decision under 29 U.S.C. § 1401(b)(2) is extremely narrow because courts must presume that the arbitrator's findings of fact are correct, and that presumption is rebuttable only by a clear preponderance of the evidence. *Id*. Further, reviewing courts must give great deference to an arbitrator's determination because of the MPPAA's strong policy favoring arbitration of withdrawal liability disputes. *Id*. Accordingly, district courts review an arbitrator's findings of fact for clear error and conclusions of law de novo. *Id*. at 393. Mixed questions of fact and law are subject to the clearly erroneous standard. *Jos. Schlitz Brewing Co. v. Milwaukee Brewery Workers' Pension Plan*, 3 F.3d 994 (7th Cir. 1993), *aff'd*, 513 U.S. 414 (1995).

### B. Statutory Framework

Multiemployer ERISA plans are "maintained pursuant to one or more collective bargaining agreements," "to which more than one employer is required to contribute." 29 U.S.C. § 1002(37)(A)(i), (ii). These plans provide benefits for union members who work for employers in the same industry. *Sofco Erectors, Inc. v. Trustees of Ohio Operating Engineers Pension Fund*, 15 F.4th 407, 415 (6th Cir. 2021) (citation omitted). Employees do not sacrifice pension benefits by working for multiple employers because service for any contributing employer is credited by the plan. *Id*. Employer withdrawal from these multiemployer plans reduces a plan's contribution base, pushing the contribution rate for remaining employers higher, encouraging further employer withdrawals, and ultimately threatening the plan's survival. *Id*. (quoting *Connolly v. PBGC*, 475 U.S. 211, 216 (1986)). Congress passed the MPPAA to address this key problem. 29 U.S.C. §§ 1381-1461.

> The MPPAA imposes liability for withdrawals from multiemployer pension plans. But Congress designed special rules for the construction industry because its work often fluctuates and is done on a project-by-project basis. When a construction employer stops contributing to a plan (for example, because its project is over), the plan's contribution base does not necessarily decline in response; the workers employed by the withdrawing construction firm are often hired for other projects by other contributing employers. The plan is not threatened as long as contributions continue to be made for work done in that area.

> Thus, the construction industry rules focus on whether the employer, though no longer contributing to the plan, continues to perform work for which contributions were previously required. Only then is withdrawal liability imposed.

*Sofco*, 15 F.4th at 416 (internal citations omitted). Under this construction industry exception, a construction employer is liable for a complete withdrawal from a pension plan if it "ceases to have an obligation under the plan" but "continues to perform work in the jurisdiction[6] of the collective bargaining agreement of the type for which contributions were previously required." 29 U.S.C. § 1383(b)(2).

### C. Application

The arbitrator concluded that defendants here were not liable for employer withdrawal from the Laborers' Fund because Pumpco's continued pump truck operations were not within the jurisdiction of the Laborers' CBA and were not of the type for which contributions were previously required. Plaintiffs challenge the arbitrator's legal conclusion that pump truck operations were not within the jurisdiction of the Laborers' CBA.

"Jurisdiction over work is determined by the jurisdictional provisions of the relevant collective bargaining agreement." *Sofco*, 15 F.4th at 429

---

[6] "Jurisdiction" in this context covers both the union's defined trade, or craft, and its geographical jurisdiction. *Stevens Eng'rs & Constructors, Inc. v. Loc. 17 Iron Workers Pension Fund*, 877 F.3d 663, 671 (6th Cir. 2017).

(quoting *Stevens Eng'rs & Constructors, Inc. v. Loc. 17 Iron Workers Pension Fund*, 877 F.3d 663, 670 (6th Cir. 2017)). A court interprets a collective bargaining agreement according to ordinary principles of contract law and, where the written terms of the contract are clear and unambiguous, its meaning is ascertained as plainly expressed. *Id*. (citing *M & G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015)).

The parol evidence rule prohibits the use of extrinsic evidence to interpret unambiguous language within a contract. *Shay v. Aldrich*, 790 N.W.2d 629, 641 (Mich. 2010). However, extrinsic evidence is permissible to determine the actual intent of the parties if a contract is ambiguous. *Id*. An ambiguity in a contract may be patent or latent. *Id*. A latent ambiguity is

> one "that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." Because "the detection of a latent ambiguity requires a consideration of factors outside the instrument itself, extrinsic evidence" . . . may be used to show that a latent ambiguity exists . . . "as well as to resolve any ambiguity proven to exist."

*Id*. (quoting *Grosse Pointe Park v. Mich. Muni. Liability & Prop. Pool*, 702 N.W.2d 106, 113 (Mich. 2005)). To verify the existence of a latent ambiguity, a court must examine the presented extrinsic evidence to determine if that evidence supports an argument that the contract language "is susceptible to more than one interpretation. Then, if a latent ambiguity is

found to exist, a court must examine the extrinsic evidence again to ascertain the meaning of the contract language at issue." *Id*.

The parties agree that the Laborers' CBA defines jurisdiction by reference to The Manual of Laborers' Union Jurisdictional Claims, which provides the following relevant categories of covered work:

> a) **Concrete, bituminous concrete, or aggregates for walls, footings, foundations, floors or for any other construction.** Mixing, handling, conveying, pouring, vibrating, gunniting and otherwise placing concrete or aggregates, whether done by hand or any other process. Wrecking, stripping, dismantling and handling concrete forms and false work. Building of centers for fireproofing purposes. Operation of motorized wheelbarrows or buggies or machines of similar character, whether run by gas, diesel or electric power. **When concrete or aggregates are conveyed by crane or derrick, or similar methods, the hooking on, signaling, dumping, and unhooking the bucket. Placing of concrete or aggregates, whether poured, pumped, gunnited, or placed by any other process.** The assembly, uncoupling of all connections and parts of or to equipment used in mixing or conveying concrete, aggregates or mortar, and the cleaning of such equipment, parts and/or connections. All vibrating, grinding, spreading, flowing, puddling, leveling and strike-off of concrete or aggregates by floating, rodding or screening, by hand or mechanical means prior to finishing. Where pre-stressed or pre-cast concrete slabs, walls or sections are used, all loading, unloading, stockpiling, hooking on, signaling, unhooking, setting and barring into place of such slabs, walls or sections. All mixing, handling, conveying, placing and spreading of grout for any purpose. Green cutting of concrete or aggregate in any form, by hand, mechanical means, grindstones or air or water.

ECF No. 16-4, PageID.532-34 (emphasis added).

Focusing on the phrase "[p]lacing of concrete or aggregates, whether poured, pumped, gunnited, or placed by any other process," plaintiffs argue that the CBA clearly encompasses pump truck operations within its jurisdiction. *Id*. Plaintiffs contend that the arbitrator erroneously concluded that the plain language of the CBA does not include pump truck operations and further erred by considering extrinsic evidence to reach that conclusion. Defendants counter that the language relied upon by plaintiffs does not unambiguously cover pump truck operations and that therefore the arbitrator properly considered extrinsic evidence. Defendants also maintain that, based on the considered extrinsic evidence, the arbitrator was right to conclude that pump truck operation was not within the Laborers' CBA.

The Court agrees that the arbitrator correctly determined that pump truck operations are not within the jurisdiction of the Laborers' CBA and, as a result, that Pumpco's continuation of Gemelli's pump truck operations did not trigger withdrawal liability. The Laborers' CBA does not expressly address pump truck operations. *See id*. Contrary to plaintiffs' argument that "[p]lacing of concrete or aggregates, whether poured, pumped, gunnited, or placed by any other process" plainly includes pump truck operations within

the CBA's jurisdiction, this phrase does not unambiguously establish that the operation of a pump truck is within the work covered by the CBA.

First, placing concrete that is pumped could be interpreted, as the plaintiffs urge, as the pumping of concrete. But it could also be understood, as defendants argue, as the manual labor involved in the placement of concrete, i.e., the moving, distributing, leveling, smoothing, or other maneuvering of concrete deposited by a pump.

Second, even if the CBA incontrovertibly included the pumping of concrete as covered work, that function does not necessarily comprise operating a pump truck. The phrase directly preceding the "placement of concrete" provision, relied upon so heavily by plaintiffs, suggests that it does not. That phrase—"When concrete or aggregates are conveyed by crane or derrick, or similar methods, the hooking on, signaling, dumping, and unhooking the bucket"—lists only specific jobs covered when concrete is conveyed by crane, derrick, or similar apparatus, implying that the separate job of operating those sophisticated pieces of heavy equipment is not covered work under the CBA.[7] *Id.* And, as defendants contend,

---

[7] That pump truck does not appear in the list of tools of the trade strengthens this implication. ECF No. 16-4, PageID.542

conveyance by pump truck plausibly qualifies as a method similar to conveyance by crane or derrick.

The absence of an express reference to pump truck operation, along with the potentially conflicting implications of the adjacent phrase discussed above, arguably creates patent ambiguity over whether pump truck operations fit within the jurisdiction of the Laborers' CBA. But even if the jurisdictional language of the CBA does not create uncertainty as to the parties' intended meaning, latent ambiguity certainly arises from an attempt to apply the document's terms to pump truck operations.

For example, Article IV of the CBA spells out the wage rates and benefits for the various positions held by Laborers. ECF No. 16-4, PageID.413-15. It specifies the pay and benefit rates for Commercial and Industrial Laborer, Foreman, Mortar Mixer, Scaffold Builder, Signalman, Top Man (sewer and caisson work), Air Electric or Gasoline Tool Operator (including concrete vibrator and operator and acetylene torch), Air Hammer Operator, and Apprentice Laborer, as well as separate rates for residential wall and flat work. *Id*. The CBA does not identify Pump Truck Operator, nor does it obviously fit in any of the named categories. *Id*. Similarly, pump truck is not listed among the equipment used by Laborers. *Id*.; ECF No. 16-4, PageID.542. Given this void, the arbitrator appropriately considered

factors outside the CBA to verify that its language is susceptible to more than one interpretation regarding the coverage of pump truck operation and to ascertain which interpretation reflects the parties' intent.

The arbitrator weighed the presented evidence of the parties' conduct and industry practice to determine if the parties intended the Laborers' CBA to cover pump trump operation. She considered evidence that the parties did not intend pump truck operation within the Laborers' jurisdiction:

- Pumpco, which confines its business to renting pump trucks and pump truck operators to others, does not employ Laborers. Pumpco's customers supply Laborers to connect and guide hoses to place concrete and to disconnect the hoses when pump truck operator finishes operating the pump and boom. ECF No. 16-2, PageID.188.
- Laborers did not organize the pump truck operators employed by Pumpco, nor was there evidence of other employers using Laborers as pump truck operators. Likewise, plaintiffs never pursued a claim against a concrete industry employer for making contributions to OE funds for the operation of pump trucks. *Id*. at PageID.187.
- Pump truck operations is a skilled trade and operators are certified by the American Concrete Pumping Association; it is paid consistent with other skilled trades organized by the OE. Laborers'

representative testified that under the Laborers' CBA pump truck operators would be paid at much lower unskilled general laborer rate. *Id*.

- The jurisdictional provision of OE CBA clearly and unequivocally claims jurisdiction over the operation of a concrete pump truck. The OE CBA also specifies a wage rate for an operator of a concrete pump with a boom; the Laborers' CBA contains no wage rate for a pump truck operator. *Id*. at PageID.187-88.

The arbitrator likewise considered evidence that the parties intended the Laborers' CBA to cover pump truck operations:

- Gemelli contributed to the Laborers' Fund for its Laborers employees performing pump truck work prior to September 2019. *Id*. at PageID.186.

- Laborers' Fund trustees testified that they assumed without discussion that pump truck services fell under the jurisdiction of the Laborers' CBA. *Id*.

- Laborers' representative testified that he was aware via hearsay that other concrete employers used Laborers to operate pump trucks.[8]

---

[8] Principals of the identified companies supposedly employing Laborers as pump truck operators supplied affidavits refuting this hearsay assertion. *Id*.

*Id*. at PageID.187.

After appropriately considering the extrinsic evidence, the arbitrator concluded that pump truck operator was not within the jurisdiction of the Laborers' CBA and, on that basis, determined that Pumpco's continued pump truck operations did not trigger employer withdrawal liability.

Plaintiffs argue that the arbitrator erred in concluding that Pumpco was not performing covered work for which contributions were previously required. Plaintiffs argue that the arbitrator improperly compared the Laborers' CBA to the OE CBA in reaching her conclusion. Contrary to plaintiffs' assertion, the arbitrator did not simply compare the Laborers' CBA with the OE CBA to decide that because the OE CBA specifically mentioned pump truck operations, it covered that work to the exclusion of the Laborers' CBA. Rather, the arbitrator considered that parties intending to cover pump truck operators plainly expressed so as in the OE CBA. That the Laborers' CBA lacked such a clear expression of coverage, along with other extrinsic evidence of party conduct and industry practice, convinced the arbitrator that the parties did not intend the Laborers' CBA to cover pump truck operations.

Relatedly, plaintiffs argue that the arbitrator erred by finding that CBAs are mutually exclusive and thus the Laborers' CBA could not cover

pump truck operators because the OE CBA covered them. Again, the arbitrator made no such conclusion. She concluded that extrinsic evidence, including, but not limited to, the fact that another CBA clearly expressed coverage for pump truck operations and included a wage rate specifically for pump truck operators, showed that the parties to the Laborers' CBA did not intend to cover pump truck operations.

Plaintiffs cite out-of-circuit cases to support their argument that funds can insist on payment even if the work for the covered job is done by members of another union. *See, e.g.*, *Trustees of the Glaziers Union Loc. 27 Welfare & Pension Funds v. Gibson*, 99 F. App'x 740 (7th Cir. 2004). In *Gibson*, the court held the employer liable for contributions to the benefit funds for the glazer union, even though the employer assigned the job to workers who were members of the iron workers union and made contributed to the iron workers' benefit funds for the hours worked for that job. *Id*. at 741. *Gibson* is inapposite here, however, because in that case, the covered glazing work fell within the jurisdiction of both the glazing CBA and the iron workers CBA. *Id*. at 741-42. In fact, all the cases cited by plaintiffs address situations in which the covered work was indisputably within the jurisdiction of two CBAs. *See Laborers Int'l Union of N.A., AFL-CIO and Eshbach Bros., LP and Int'l Union of Oper. Eng'rs, AFL-CIO Loc.*

*542*, 2005 WL 263702 (N.L.R.B. 2005) (overlapping coverage for forklift work under Laborers' and OE CBA); *see also Sofco*, 15 F.4th at 430 (forklift work within the jurisdiction of both OE and iron workers CBA); *Stevens*, 877 F.3d at 668 (but for agreement assigning work to millwrights, demolition and power rigging work was covered under both iron workers and millwrights CBAs). In contrast, the arbitrator here determined that pump truck operations did not fall under the jurisdiction of the Laborers' CBA.

In sum, the Court finds that the arbitrator properly considered extrinsic evidence to determine that pump truck operation was not within the jurisdiction of the Laborers' CBA, and that this conclusion is not clearly erroneous. Because pump truck operation was not within the jurisdiction of the Laborers' CBA, Pumpco's continued work in that arena did not trigger employer withdrawal liability.

**IV. Conclusion**

For these reasons, the Court **GRANTS** defendants' motion to enforce the arbitration award (ECF No. 16) and **DENIES** plaintiffs' motion to vacate the arbitration award (ECF No. 17).

                                                 s/Shalina D. Kumar
                                                 SHALINA D. KUMAR
                                                 United States District Judge

Dated: September 26, 2023